RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

AARON M. GREEN, ISB #12397
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov

*Attorneys for Defendant*
*Raúl Labrador*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORTHWEST ASSOCIATION OF INDEPENDENT SCHOOLS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as the Attorney General for the State of Idaho, *et al.*,<br><br>*Defendants.* | Case No. 1:24-cv-00335-AKB<br><br>**DEFENDANT RAÚL LABRADOR'S REPLY IN SUPPORT OF MOTION TO DISMISS [DKT. 32]** |

**INTRODUCTION**

A 48-year-old obscenity statute is construed the same as a modern child protection statute: "whenever possible . . . so as to achieve a constitutional result." *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 68, 28 P.3d 1006, 1011 (2001). Plaintiffs in this case ask the Court to do the exact opposite—nitpick the challenged statutes using only unconstitutional constructions, even in the face of correct alternatives. But proper construction of the challenged statutes causes them to operate just as the Legislature intended, in accord with *Miller v. California,* 413 U.S. 15 (1973). Dkt. 32-3 (Senate Jud. Comm. Hrg. Mins., Mar. 1, 1976). The statutes are constitutional, the Plaintiffs lack standing, and the Court should dismiss the Complaint.

**ARGUMENT**

I.  **Plaintiffs lack standing.**

   A.  **All Plaintiffs lack pre-enforcement standing.**

Plaintiffs lack standing for the relief they seek. "'The party invoking federal jurisdiction bears the burden of establishing' the elements of standing." *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Pre-enforcement standing requires a concrete plan to violate the law and substantial likelihood of enforcement. *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022). "Neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies this test." *Id.* (quoting *Thomas v. Anchorage Civil Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)).[1]

---

[1] Plaintiffs argue that the panel in *Peace Ranch v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) displaced *Thomas* as to threats of enforcement. Dkt. 38 at 28. But panels cannot overrule earlier panels or an opinion en banc. *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

Here, plaintiffs fail to show pre-enforcement standing. First, they fail to state any concrete plan to violate the statute. "Despite [the] 'relaxed standing analysis' for pre-enforcement challenges" under the First Amendment, "plaintiffs must still show an *actual* or *imminent* injury to a legally protected interest." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (emphasis added) (quoting *Cantella v. California*, 304 F.3d 843, 853 n.11 (9th Cir. 2002)). Plaintiffs must allege "a threat of potential enforcement will cause them to self-censor," but despite being subject to the law now, they fail to do so. *See Nat'l Shooting Sports Found. v. Lopez*, ___ F.Supp.3d ____, 2024 WL 1703105 at *12 (D. Haw. 2024) (quoting *Tingley*, 47 F.4th at 1067) (cleaned up); *King's English, Inc. v. Shurtleff*, 620 F.Supp.2d 1272, 1279-80 (D. Utah 2007).

Second, Plaintiffs do not allege a substantial likelihood of enforcement against them. Even under *Peace Ranch*, the likelihood of enforcement as to *Plaintiffs* must be "substantial." 93 F.4th at 487. Instead of alleging anything that the Defendants have done or said, Plaintiffs instead rely on statements from third parties not connected to Defendants. Dkt. 38 at 35-36 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)). In *Driehaus*, enforcement of the challenged law was initiated by a formal complaint that could come from anyone. *Id.* at 152-53. By contrast, the challenged enforcement mechanism has no formal role for private individuals. *Compare id.* at 152-53 *with* Idaho Code § 18-1517B(5). In *Driehaus*, because anyone could begin the action being challenged, enforcement was more likely. *Driehaus* does not apply.

Nor is *Isaacson v. Mayes* relevant. 84 F.4th 1089, 1101 (9th Cir. 2023). In that case, not only had multiple state officials affirmed that they would enforce the challenged abortion prohibitions against the parties, but relevant briefing on appeal was "silent on the possibility of civil suits brought under the Regulations' private right of action," and oral arguments were

similarly unenlightening. *Id. Isaacson*'s dicta, without citation, briefing or analysis, is not binding or persuasive.[2] *See City of Los Angeles v. Barr*, 941 F.3d 931, 943 n.15 (9th Cir. 2019).

### B. Individual Plaintiffs lack an injury.

In support of standing, Plaintiffs raise inapposite caselaw. Again, neither Idaho Code Section 18-1514 nor 18-1517B reach beyond *Miller* to material that is non-obscene as to minors. Nor do they inhibit the ability of the individual plaintiffs to receive any work. Having conceded the fact that they cannot bring suit to enjoin the private right of action, Dkt. 38 at 36 n.16, what remains of Plaintiff's case is a suit to prevent the Attorney General from bringing actions against schools or public libraries to enjoin violations of the prohibition on making obscene material available to minors. Idaho Code § 18-1517B(5).[3] But the Attorney General cannot bring an injunction against any of the individual plaintiffs.

Plaintiffs cite cases where an injury results from an act of the defendant in obstructing the flow of information. *See Arce v. Douglas*, 793 F.3d 968, 973-75 (9th Cir. 2015) (specific actions of superintendent and state board of education responsible for deprivation of school course some plaintiffs attended); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 750-54 (1976) (defendant enforced ban preventing advertising prescription drugs to plaintiffs taking such drugs). But here, absent any allegations of even threatened obstruction, all Plaintiffs allege is a "generalized" informational harm from the existence of a

---

[2] To the contrary, suit against a defendant for a provision he cannot enforce is contrary to the logic of standing, *see Building Owners and Managers Assoc. of Chi. v. City of Chicago*, 513 F.Supp.3d 1017, 1030 (N.D. Ill. 2021), and *Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021).

[3] Nothing about any part of the statute requires an "adults-only" section. It is one optional mechanism to avoid civil liability. *See* Idaho Code § 18-1517B(3).

statute, not a specific injury. *See Carney v. Adams*, 592 U.S. 53, 60 (2020); *see also Boschma v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 2018 WL 2251629 at *2-3 (C.D. Cal. 2018).

### C. Library Plaintiffs are not public libraries.

While the Library Plaintiffs argue that they are "common[ly] underst[ood]" to be public libraries, they cite no authority that their privately funded libraries are public libraries for purposes of Section 18-1517B. Dkt. 38 at 42. Idaho maintains a system of public libraries and districts funded by local taxation. Idaho Code §§ 33-2603; -2613(1); -2702(6); -2710. This is the only definition and discussion of public library in Idaho Code. Further, the American Library Association's definition of public library agrees; "a public library is established under *state enabling laws* or regulations" and "is supported in whole or in part with *public funds*." *Definition of a Library*, Am. Library Assoc., https://libguides.ala.org/library-definition. (emphases added). Plaintiffs allege no public support or public establishment, and so are not public libraries. They lack standing.

## II. Plaintiffs have not demonstrated ripeness.

For the reasons stated above, Plaintiffs have yet to satisfy the injury-in-fact requirements of Article III, and thus also fail to satisfy the constitutional ripeness doctrine. *Thomas*, 220 F.3d at 1138-39.

Nor do Plaintiffs acknowledge, under prudential standing, the hardship of Defendants having to adjudicate a case where no enforcement action has been taken, and where no Plaintiff has indicated how they are chilled, have not demonstrated that they are chilled, and even at this late date cannot say how they presently are affected by the statutes. *See* Dkt. 36 at 9-10. This is exactly what the Court in *Thomas* warned against: deciding "constitutional

questions in a vacuum" where the effect of the statute rests upon "hypothetical situations" with hypothetical works and hypothetical audiences. 220 F.3d at 1141-42 (first quotation from *American-Arab Anti-Discrim. Comm. v. Thornburgh*, 970 F.2d 501, 511 (9th Cir. 1992)).

### III. Plaintiffs' retreat from asking that H.B. 710 be enjoined is fatal to standing.

Plaintiffs have apparently recognized that *Whole Women's Health* bars their action and the Complaint should therefore be dismissed based on that concession. Dkt. 38 at 36 n.16. They attempt to address this problem by now stating that they are not challenging the constitutionality of the citizen enforcement provision, while still relying on the citizen enforcement provision to try to conjure up standing against the Attorney General. But their indiscriminate challenge to seemingly every provision of both statutes—regardless of enforcement power—mixes up the role of Defendants with the role of hypothetical private parties. *See e.g.*, Dkt. 1 at ¶¶ 25, 29, 69, 150-64, 173-74, 184-86, 194-95, 199-202, 222, 240, 256-57; Dkt. 17-1 at 11 ("cash bounty"), 27-28, 30, 35 ("individual Idahoans", "citizen"), 41. But Plaintiffs show that they lack standing through this commingling of allegations. Every single one of Plaintiffs' specific allegations supporting standing refer to private parties who are not before the Court. Lacking any allegations as to Defendants, all Plaintiffs have to support standing is the mere existence of a proscriptive statute. *Tingley*, 47 F.4th at 1067. But "Plaintiff[s] must give the defendants a clear statement about what the defendants allegedly did wrong." *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F.Supp.3d 1180, 1188 (D. Nev. 2023) (cleaned up). They do not do so here, and therefore lack standing.

### IV. Plaintiffs fail to state a claim.

When construing a state statute, federal courts apply state canons of construction. *Santa*

*Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 485 (9th Cir. 2024) (citations omitted). A statute must be construed "so as to achieve a constitutional result." *Bradbury*, 136 Idaho at 68, 28 P.3d at 1011. "To ascertain the legislature's intent, this Court examines the literal words of the statute, the context of those words, the public policy behind the statute, and the statute's legislative history." *Fell v. Fat Smitty's L.L.C.*, 167 Idaho 34, 38, 467 P.3d 398, 402 (2020) (citation omitted). Courts also "assum[e] that the legislature knew of all legal precedent and other statutes in existence at the time the statute was passed." *Id.* (internal quotations omitted). By contrast, Plaintiffs invite the Court to only draw conclusions that they believe result in an unconstitutional abridgment of speech or are unconstitutionally vague even when a constitutional construction is more reasonable. Plaintiffs ignore that the Idaho Legislature is presumed to have known of *Miller* in 1976 and that the obscenity statute was adopted with the *express purpose of* compliance with *Miller*. Dkt. 32-3.

### A. "Includes" does not expand the scope beyond what *Miller* permits.

Plaintiffs argues that the use of the phrase "includes" to introduce the definition of "harmful to minors" and in its description of patently offensive conduct renders the statute overbroad. This is wrong. First, this Court's goal is to ascertain legislative intent. The only legislative history (completely absent from Plaintiffs' response) indicates that Idaho Code Section 18-1514(6), like the rest of the statute, was adopted in order to comply with *Miller*.

Second, Plaintiffs invoke the presumption that the word "include" is inclusive rather than exclusive at the start of the subsection. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* at 132-33 (2012 ed.). But this canon only applies to lists. What follows the first "includes" in subsection (6) is not a list, but a single item—"the quality"

of a given work—with separate specific subparts. Because what follows "includes" is not a list, but a single item, the presumption does not apply to that use of the word includes.

Third, Plaintiffs' separate objection to the incorporation of the patently offensive prong of *Miller* is without merit. *Miller* did not confine what could be considered patently offensive to "offensive representations or descriptions of ultimate sexual acts," or other matters, but specifically noted that these were "a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion." *Miller,* 413 U.S. at 25. This corresponds with Section 18-1514(6)(b)—if *Miller* gave only examples, and not a complete list, then a statute need not go any farther than *Miller* did by illuminating a few clear examples. *See also* 413 U.S. at 25, 30 (patent offensiveness is "essentially [a] question[] of fact"). This inclusiveness is not unique to Idaho. *See* Cal. Civ. Code § 1708.88(b)(2); Okla. Stat. tit. 21 § 1024.1. The statute corresponds, as intended, with *Miller*. They mean the same.

**B.  Plaintiffs fail to negate the reasonable construction of "homosexuality."**

In context, the use of the term "homosexuality" in Idaho Code Section 18-1514(3)'s definition of "sexual conduct" refers to same-sex sexual intercourse. But Plaintiffs insist that it must mean something more in order to support their argument that the statute is unconstitutional, arguing that same-sex sexual intercourse is actually included in the use of the "sexual intercourse" language instead. Even if it is, "substantial overlap in definitions does not render terms superfluous." *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1211 (9th Cir. 2015). Plaintiffs offer no, affirmative, reason to read "homosexuality" to mean anything other than same-sex sexual intercourse. Their argument that the Legislature chose to *expressly* incorporate homosexual sexual intercourse within the definition of sexual conduct for other

statutes, and therefore it must mean something else in this statute, simply shows that the Legislature used different definitions in different parts of the Idaho Code.

### C. The "harmful to minors" savings clause applies universally.

Plaintiffs' attempt to find unconstitutionality in the savings clause rests on the apparent omission of a line-break in the statute between Idaho Code § 18-1514(6)(b)(ii) and the beginning of the clause "[n]othing herein contained." But, like every other instance of the serious value savings clause in the 1976 statute, this one begins with a new sentence following a list of patently offensive conduct. *Compare* Idaho Code § 18-1514(6)(b)(ii) *with* Idaho Code §§ 18-4101(A)(2)(b); 18-4101(I)(2). A purportedly missing line break, like missing punctuation, "neither alters the text's substance nor obscures its meaning." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534-35 (2004). Second, like every other savings clause, there is no separate numerate or subsection for the savings clause. But grammatically, they are identical. *See Wurdemann v. State*, ___ P.3d ____, 2024 WL 3892885 at *4 (Idaho 2024) (looking to "*grammatical* construction" of statute) (citation omitted) (emphasis added). At worst, the lack of a line-break is scrivener's error. *See e.g.*, *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 462 (1993) ("Courts, we have said, should disregard the punctuation, or repunctuate, if need be, to render the true meaning of the statute.") (internal quotation omitted). Nonetheless, the clauses read the same whether in Section 18-4101 or 18-1514: sentences following a list.

### D. States may consider minor age and context when determining serious value.

Plaintiffs object to the incorporation of the term "context" in the savings clause, but these objections are belied by their own cited cases. Dkt. 38 at 20-23. Context is necessarily considered in distinguishing between minors and adults per *Ginsberg v. State of N.Y.*, 390 U.S.

629, 634-35 (1968). Something can be obscene as to minors, and not adults. *Id.* at 638. Thus, by definition, maturity (and thus context) matters.

The cases Plaintiffs cite support this distinction among ages and audiences of minors. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214 n.11 (1975) notes that "[i]n assessing whether a minor has the requisite capacity for individual choice the age of the minor is a significant factor." Thus, a minor of eight may be prohibited from seeing material that a minor of sixteen could not be barred from viewing. Plaintiffs expand the opinion (on certification) in *Virginia v. Am. Booksellers*, 372 S.E.2d 618, 624 (Va. 1988) to extremes: once a work has serious value as to some minors, it must have serious value to all minors. Dkt. 38 at 20-21.[4] To the contrary, the Virginia Supreme Court's interpretation of its statute found serious value for a "legitimate minority" of adolescents rather than *any* such minority. 372 S.E.2d at 624. Implicit is that, again, two dimensions of analysis are at play; the work and the age of the minor.

Overall Plaintiffs' discussion of obscenity in the context of minors ignores that obscenity operates in multiple dimensions with respect to minors, considering not only whether the work itself might be protected, but whether the presentation to a particular minor is protected. *Erznoznik*, 422 U.S. at 214 n.11. Plaintiffs' citation of *Reno*, 521 U.S. at 873 is simply irrelevant. *See* Dkt. 38 at 20. The statute in *Reno* omitted the serious value requirement

---

[4] To illustrate the problem with this view of serious value under *American Booksellers* and *Reno*, consider the critically acclaimed films *Deliverance*, Warner Bros. Pictures (1972), or *Eyes Wide Shut*, Warner Bros. (1999). Plaintiffs' argument supposes that if these films (to take the film class example again) possess serious value for some "legitimate minority" of seventeen-year-olds in a college class, that they possess serious value for a first-grade movie day. This cannot be right. The rule is not that once a work has serious value as to a single minor in a single instance that it has value to all minors in all circumstances. Rather, serious value–judged by a reasonable person–is always the floor. *See Reno v. ACLU*, 521 U.S. 844, 873 (1997); *Pope v. Illinois*, 481 U.S. 497, 500-01 (1987).

entirely, and the Supreme Court held that the purpose of such a provision is not bound by *community* standards, as the other prongs of *Miller*. 521 U.S. at 873. Context with respect to presentation and audience have nothing to do with the principle that serious value must possess the same floor whether in Idaho or Illinois. *See id.* This does not set a one-size-fits-all-minors ceiling for protection, as Plaintiff argues because serious value presumes a reasonable person standard. *See* Dkt. 38 at 21; *Pope*, 481 U.S. at 500-01; *see also Reasonable Person*, Black's Law Dictionary (12th ed.).

Plaintiffs' remaining arguments rely first on simply ignoring the construction offered by the Attorney General. *See* Dkt. 38 at 23. Because "matter" commonly defined includes both works and depictions, context illuminates the definition here: "work." The context in which the *matter* is presented to a minor, and to which minor it is presented, determines if it has serious value. *Erznoznik*, 422 U.S. at 214 n.11 The second argument is that because "context" appears in Section 18-4101, "context" in Section 18-1514 cannot include ages. This makes no sense. *See Context*, Merriam Webster Online ("the interrelated conditions in which something exists or occurs") (last visited Sept. 12, 2024). Both statutes allow consideration of relevant circumstances (including the age of a minor) to determine if a work possesses serious value. A reasonable person considers the context in which a work is presented to a minor in determining if it has serious value as to a minor and different relevant context (like commercial exploitation in Section 18-4101) as to an adult, as each statute directs.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

DATED: September 13, 2024.

        STATE OF IDAHO
        OFFICE OF THE ATTORNEY GENERAL

By:   /s/ *Aaron M. Green*
     AARON M. GREEN
     Deputy Attorney General

     *Attorney for Defendant*
     *Raúl Labrador*

## **CERTIFICATE OF SERVICE**

I Hereby Certify that on September 13, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Wendy J. Olson
wendy.olson@stoel.com

Nicole C. Hancock
nicole.hancock#stoel.com

Latonia Haney Keith
lhaney@post.harvard.edu

Mckay Cunningham
cunninghammckay@gmail.com

Hayley Steele
steelehc@ballardspahr.com

Carey R. Dunne
carey@freeandfair.org

Kevin Trowel
kevin@freeandfair.org

Martha Reiser
martha@freeandfair.org

David L. Axelrod
axelrodd@ballardspahr.com

Lesley F. Wolf
wolfl@ballardspahr.com

*Attorneys for Plaintiffs*

Dayton P. Reed
civilpafiles@adacounty.id.gov

*Attorney for Ada County Prosecuting Attorney Jan M. Bennetts*

Timothy K. Graves
blaincountyprosecutor@co.blaine.idaho.us

*Attorney for Blain County Prosecuting Attorney Matthew Fredback*

        /s/ *Aaron M. Green*
       Aaron M. Green