UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORTHWEST ASSOCIATION OF INDEPENDENT SCHOOLS; SUN VALLEY COMMUNITY SCHOOL, INC.; FOOTHILLS SCHOOL OF ARTS AND SCIENCES, INC.; THE COMMUNITY LIBRARY ASSOCIATION, INC.; COLLISTER UNITED METHODIST CHURCH, INC.; MARY HOLLIS ZIMMER; MATTHEW PODOLSKY; JEREMY WALLACE, on behalf of his minor child, A.W.; CHRISTINA LEIDECKER, on behalf of herself and her minor child, S.L., | Case No. 1:24-cv-00335-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |
|      Plaintiffs, | |
|      v. | |
| RAUL LABRADOR, in his capacity as the Attorney General for the State of Idaho; JAN BENNETTS, in her capacity as Prosecuting Attorney for Ada County, Idaho; MATT FREDBACK, in his capacity as Prosecuting Attorney for Blaine County, Idaho, | |
|      Defendants. | |

Pending before the Court are: (1) Plaintiffs' Motion for a Preliminary Injunction (Dkt. 17);

(2) Defendant Ada County Prosecuting Attorney Jan M. Bennetts' Motion to Dismiss (Dkt. 29);

(3) Defendant Blaine County Prosecuting Attorney Matthew Fredback's Motion to Dismiss

(Dkt. 31); and Defendant Idaho Attorney General Raul Labrador's Motion to Dismiss (Dkt. 32).

**MEMORANDUM DECISION AND ORDER - 1**

Having reviewed the record and the parties' submissions, the Court finds that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court denies Plaintiffs' motion for a preliminary injunction and grants in part and denies in part Defendants' motions to dismiss.

## I.    BACKGROUND

### A.    House Bill 710

### 1.    § 18-1514(6) defining "harmful to minors"

In 1972, the Idaho Legislature enacted Idaho Code § 18-1514, which defines "harmful to minors" for purposes of Idaho's indecency and obscenity laws. I.C. § 18-1514(6) (1972). In 1973, the Supreme Court issued its landmark decision in *Miller v. California*, 413 U.S. 15, 24 (1973), establishing the three-part *Miller* test for determining if material is obscene. Thereafter, legislative history establishes that the Idaho Legislature amended § 18-1514 in 1976 to comport with the *Miller* test. (Dkt. 32-3) (explaining statute was amended because it conflicted with *Miller*).

In April 2024, the Idaho Legislature again amended the definition of "harmful to minors" in § 18-1514 when it passed Idaho House Bill 710 (2024) ("H.B. 710"), which became effective on July 1, 2024. The definition of "harmful to minors" now provides:

> 6. "Harmful to minors" includes in its meaning the quality of any material or of any performance or of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it
>
> (a) Appeals to the prurient interest of minors as judged by the average person, applying contemporary community standards; and

(b) Depicts or describes representations or descriptions of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse which are patently offensive to prevailing standards in the adult community with respect to what is suitable material for minors and includes, but is not limited to, patently offensive representations or descriptions of:

(i)    Intimate sexual acts, normal or perverted, actual or simulated; or

(ii)   Masturbation, excretory functions or lewd exhibition of the genitals or genital area. *Nothing herein contained is intended to include or proscribe any matter which, when considered as a whole, and in context in which it is used, possesses serious literary, artistic, political or scientific value for minors.*

Idaho Code § 18-1514(6) (emphasis added).[1]

Defendant Raúl Labrador (the "Attorney General") refers to the final italicized sentence in § 18-1514(6) as the "Savings Clause." According to the Attorney General, the Idaho Legislature added the Savings Clause to the statute in 1976 for purposes of incorporating the *Miller* test. (Dkt. 32-1 at p. 8). H.B. 710's only substantive change to the Savings Clause was to remove the phrase "according to prevailing standards in the adult community, with respect to what is suitable for minors."[2]

---

[1]    In addition to minor clerical changes, the 2024 amendment to the definition of "harmful to minors" omits two phrases. *Compare* I.C. §§ 18-1514(6)(a)(2)(ii), 18-1514(6)(b) (1976) *with* I.C. § 18-1514(6)(b)(ii) (2024) (omitting "according to the prevailing standards in the adult community, with respect to what is suitable for minors" and "[t]he quality of any material or of any performance, or of any description or representation, in whatever form, which, as a whole, has the dominant effect of substantially arousing sexual desires in persons under the age of eighteen (18) years").

[2]    Plaintiffs do not challenge H.B. 710's removal of this phrase from the Savings Clause. Meanwhile, the Attorney General argues the removal of the phrase clarifies the statute. According to the Attorney General, the change comports with *Brockett v. Spokane Arcades, Inc.*, 472 U.S.

### 2.     § 18-1517B enacting private civil and injunctive remedies

H.B. 710 also enacted the "Children's School and Library Protection Act." I.C. § 18-1517B(1) ("the Act"). The Act prohibits schools and public libraries from sharing material deemed "harmful to minors" and provides civil remedies to enforce that prohibition. Section 18-1517B(2) is the Act's substantive provision ("Substantive Provision") and provides:

> (2) Notwithstanding any other provision of law, a school or public library, or an agent thereof, shall not promote, give, or make available to a minor:
>
> > (a) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body that depicts nudity, sexual conduct, or sado-masochistic abuse and that is harmful to minors;
> >
> > (b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording that contains any matter pursuant to paragraph (a) of this subsection or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sado-masochistic abuse and that, taken as a whole, is harmful to minors; or
> >
> > (c) Any other material harmful to minors.

I.C. § 18-1517B(2). The Substantive Provision applies only to a "school or public library," but § 18-1517B does not define either term.

Section § 18-1517B also provides enforcement remedies for violations of the Act. Section 18-1517B(3) provides a private right of action (the "Private Enforcement Provision") for any minor, parent, or legal guardian against a school or public library which either gave or made

---

491, 498-99 (1985), which rejects "the premise that material that provoked 'normal, healthy sexual desires' constitutes an appeal to the prurient interest and could be obscene." (Dkt. 32-1 at p. 19 n.3). Because Plaintiffs do not challenge the removal of this phrase from the Savings Clause, the Court does not address it.

available material harmful to the minor or failed to take reasonable steps to restrict the minor's access to the harmful material. This Private Enforcement Provision contains a notice requirement. Before a private plaintiff may pursue a legal action against a school or library, that plaintiff must provide written notice to the school or public library requesting relocation of material to an adults-only section; only if the school or library does not relocate the material after thirty days may a plaintiff pursue the private right of action.[3] I.C. § 18-1517B(3)(b), (c).

Section § 18-1517B(5) also provides for government enforcement of the Act (the "Government Enforcement Provision"). Specifically, it provides that the Attorney General or an Idaho county prosecuting attorney may seek injunctive relief against any school or public library which violates the Substantive Provision.

## B.    Procedural History

In July 2024, Plaintiffs filed this action. (Dkt. 1). Plaintiffs include Northwest Association of Independent Schools ("NWAIS"), a non-profit association of independent private schools. (*Id.* at ¶¶ 18-21). Plaintiffs also include two private schools who are accredited members of NWAIS: Sun Valley Community School, Inc., and Foothills School of Arts and Sciences, Inc. (collectively the "Private School Plaintiffs"). (*Id.* at ¶¶ 22, 27). NWAIS and the Private School Plaintiffs allege, among other things, that H.B. 710 encompasses non-obscene textbooks and material, such as "celebrated works of art and literature"; unduly interferes with teaching their students; and threatens the Private School Plaintiffs' accreditation status with NWAIS. (Dkt. 17-1 at pp. 15-16).

---

[3]    A plaintiff asserting a claim under the Private Enforcement Provision may recover $250 in statutory damages and actual damages and obtain injunctive relief. I.C. § 18-1517B(4).

MEMORANDUM DECISION AND ORDER - 5

Plaintiffs also include two "privately funded public libraries," neither of which receive state funding: The Community Library Association, Inc., and Collister United Methodist Church, Inc. (collectively the "Library Plaintiffs"). (Dkt. 1 at ¶¶ 32-42, 38). The Library Plaintiffs allege they provide "books with LGBTQ+ characters," "books addressing sexual assault," "science and art books that contain nudity," and other non-obscene material. (Dkt. 17-1 at p. 16). They fear H.B. 710 prohibits their ability to share these non-obscene books and materials with minors.

Finally, Plaintiffs include several parents who challenge H.B. 710, including Mary Hollis Zimmer; Matthew Podolsky; Jeremy Wallace on behalf of his minor child, A.W.; and Christina Leidecker, individually and on behalf of her minor child, S.L. (collectively the "Parent Plaintiffs"). (Dkt. 1 at ¶¶ 7-8, 45-49). The Parent Plaintiffs allege enforcement of H.B. 710 will impact their children's access to "constitutionally protected, non-obscene materials," including "material with LGBTQ+ characters and themes," "basic health and sexual education curriculum," "art and literature that contain nudity or sexual conduct," and other non-obscene material. (Dkt. 17-1 at pp. 16-17). Leidecker also alleges she seeks to "access such materials for herself free from stigma" associated with entering an "adults only" reading section. (*Id.* at p. 17).

Defendants are three state officials who have jurisdictional authority to enforce H.B. 710 against schools and public libraries under the Government Enforcement Provision; they include the Attorney General, the Ada County Prosecuting Attorney, and the Blaine County Prosecuting Attorney. (Dkt. 1 at ¶¶ 50-52). Plaintiffs contend that under H.B. 710, "each Plaintiff is subject to the jurisdiction of" the Attorney General. (*Id.* at ¶ 50). Some Plaintiffs allege they are subject to Ada County's jurisdiction because they reside or do business in Ada County. (*Id.* at ¶¶ 51, 52). Others allege they are subject to Blaine County's jurisdiction because they reside or do business

in Blaine County. (*Id.*). While there is no indication in the record that any Defendant has enforced or threatened to enforce the Act, Plaintiffs allege they face a substantial risk of enforcement. (Dkt. 17-1 at p. 43).

Plaintiffs' complaint alleges five claims for relief, which include: (1) a First Amendment claim on behalf of NWAIS, the Private School Plaintiffs, and the Library Plaintiffs against all Defendants; (2) a Fourteenth Amendment claim on behalf of NWAIS, the Private School Plaintiffs, and the Library Plaintiffs against all Defendants; (3) a First Amendment claim on behalf of Leidecker, individually, against the Attorney General and the Blaine County Prosecuting Attorney; (4) a First Amendment claim on behalf of the Parent Plaintiffs against all Defendants; and (5) a Fourteenth Amendment claim on behalf of the Parent Plaintiffs against all Defendants. (*See* Dkt. 1).

Because Defendants have not yet enforced the Act against Plaintiffs, Plaintiffs' claims are pre-enforcement challenges. They move for a preliminary injunction and request a statewide injunction against H.B. 710. (Dkt. 17). The County Prosecuting Attorneys move to dismiss Plaintiffs' complaint for lack of jurisdiction arguing, among other reasons, that Plaintiffs lack standing to sue them because neither of them has enforced or threatened to enforce H.B. 710. (Dkts. 29, 31). The Attorney General likewise moves to dismiss Plaintiffs' complaint for lack of jurisdiction and also for failure to state a claim. (Dkt. 32).

## II.    LEGAL STANDARD

**A.    Motion to Dismiss**

**1.    Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject-matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III," it is "properly raised in a motion to dismiss under [Rule] 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) motion can present either a facial or factual attack on jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts the allegations contained in a complaint are insufficient on their face to invoke jurisdiction. *Id.* When resolving a facial attack, the court assumes the plaintiff's allegations are true. *Id.* No matter which kind of Rule 12(b)(1) motion is presented, the party asserting jurisdiction bears the burden of proof. *Kokkonen*, 511 U.S. at 377.

**2.    Rule 12(b)(6)**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the complaint's legal sufficiency. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

To survive a Rule 12(b)(6) motion, a plaintiff's allegations must provide enough factual basis which, taken as true, state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The plausibility standard is not akin to a "probability requirement" and requires more than a mere possibility a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

**B.    Preliminary Injunction**

Under Rule 65 of the Federal Rules of Civil Procedure, a party may obtain injunctive relief before final judgment in certain limited circumstances. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "Ordinarily, [preliminary] injunctions . . . may go no further than necessary to provide interim relief to the parties," and any equitable remedy must not be "more burdensome to the defendant than necessary to [redress] the plaintiff's injuries." *Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

A plaintiff seeking a preliminary injunction must establish that she is likely to succeed on the merits; she is likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in her favor; and an injunction is in the public interest. *Winter*, 555 U.S. at 20. The movant must carry her burden "by a clear showing." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). In each case, courts must balance the competing claims of injury and must consider the

effect on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 24. When the government is a party, the factors regarding public interest and equities merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The Court applies a "sliding scale" standard, "allowing a stronger showing of one element to offset a weaker showing of another." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (2011)). Under this approach, an injunction is proper where "serious questions going to the merits" and a hardship balance "tips sharply toward the plaintiff can support issuance of an injunction." *Alliance for the Rockies*, 632 F.3d at 1132; *see also N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024) (noting the merits factor is "the most important" in the court's analysis).

### III.    ANALYSIS

### A.    Defendants' Motions to Dismiss Under 12(b)(1)

Article III of the United States Constitution limits the federal judiciary to adjudicating only "cases and controversies." U.S. CONST. ART. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). "[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of [the] claim." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). This threshold question turns on three elements: "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Each Defendant moves to dismiss Plaintiffs' pre-enforcement challenge to H.B. 710 under Rule 12(b)(1) for lack of standing. The Ada County Prosecuting Attorney argues that Plaintiffs lack standing because they have not alleged and cannot allege that she has enforced or threatened to enforce H.B. 710. (Dkt. 29-1 at pp. 7-8). The Blaine County Prosecutor joins this argument, asserting he has not enforced or threatened to enforce H.B. 710 either. (Dkt. 31-1). The Attorney General also asserts Plaintiffs lack standing. (Dkt. 32-1 at pp. 11-12). The Attorney General raises two additional arguments, including that Plaintiffs' claims are not ripe and that the Eleventh Amendment bars Plaintiffs' claims to the extent they seek to enjoin private citizens from seeking relief under the Private Enforcement Provision. (*Id.* at pp. 14-17). Because Defendants' standing arguments overlap, the Court addresses their 12(b)(1) motions collectively.

### 1.    The Private School Plaintiffs' Standing

The Private School Plaintiffs bring a pre-enforcement challenge based on the First and Fourteenth Amendments.[4] "A recurring issue for federal courts is determining when the threat of enforcement creates a sufficient injury for a party to have standing to bring a pre-enforcement challenge to a law." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The Ninth Circuit has "toggled between" two tests for assessing a plaintiff's standing to bring a pre-enforcement challenge. *See Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (2024).

---

[4]    In each of their Counts, Plaintiffs incorporate by reference every preceding paragraph in its fifty-seven-page complaint. (*See, e.g.*, Dkt. 1 at ¶ 232) ("All prior paragraphs are incorporated herein by reference as if fully set forth herein."). Regardless, the Court must individually address the standing of each Plaintiff based on the available record.

In *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc), the Ninth Circuit considered whether: (1) the plaintiff has a concrete plan to violate the law, (2) the enforcement authorities have communicated a specific warning or threat to initiate proceedings, and (3) there is a history of past prosecution or enforcement. Fifteen years later, in *Driehaus*, the Supreme Court articulated another framework requiring the plaintiff to allege that: (1) he intends "to engage in a course of conduct arguably affected with a constitutional interest"; (2) that intended future conduct is arguably proscribed by the challenged statute; and (3) "the threat of future enforcement is substantial." *Driehaus*, 573 U.S. at 161-64.

The parties disagree about which pre-enforcement framework applies here. Plaintiffs argue that the Ada County Prosecutor incorrectly relies on *United Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022), which incorporates the pre-enforcement framework established in *Thomas*, 220 F.3d at 1139. (Dkt. 38 at p. 28). Instead, Plaintiffs rely on *Peace Ranch*, 93 F.4th at 487, suggesting *Thomas* is no longer the principal test after the Supreme Court's ruling in *Driehaus*. (Dkt. 38 at p. 28).

The Ninth Circuit has expressly declined to abrogate *Thomas*, however, while continuing to apply the principles *Driehaus* outlines. *See, e.g.*, *Unified Data Serv., LLC*, 39 F.4th at 1210 n.9 ("Plaintiffs suggest that the Supreme Court's decision in [*Driehaus*] abrogated the Ninth Circuit's three-part test. Not so. We have continued to apply this test after [*Driehaus*] as a means of determining whether a purported injury meets the Supreme Court's "credible threat" requirement."). The two tests are not mutually exclusive; in *Peace Ranch*, the Ninth Circuit described *Driehaus* as "incorporating part of the essence" of *Thomas* while acknowledging the court continues to use either test. *Peace Ranch*, 93 F.4th at 487 (9th Cir. 2024). In other cases, the

**MEMORANDUM DECISION AND ORDER - 12**

Ninth Circuit has used both tests. *See, e.g.*, *Tingley*, 47 F.4th at 1067 (describing that *Driehaus* "sets the general standard for pre-enforcement standing" while following the *Thomas* framework to conduct the court's analysis). On occasion, courts have fused the two frameworks. *See, e.g.*, *Idaho Fed'n of Tchrs. v. Labrador*, No. 1:23-CV-00353-DCN, 2024 WL 3276835, *9 (D. Idaho July 2, 2024) ("Under either test . . . the issues boil down to two questions: first, do Plaintiffs intend to violate the statute? Second, do Defendants intend to prosecute Plaintiffs?").

Accordingly, the Court applies *Driehaus* while recognizing *Thomas* and its progeny. *See, e.g.*, *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024) ("Though our circuit 'has toggled between' the *Thomas* and *Driehaus* formulations, we have 'adopt[ed] the Supreme Court's framework' in *Driehaus*. . . . We address the three *Driehaus* criteria in turn.") (internal citations omitted). Further, the Court acknowledges that First Amendment pre-enforcement challenges raise "unique standing considerations," which "tilt dramatically toward a finding of standing." *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (quoting *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003), and *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000)). "[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Thus, First Amendment plaintiffs are more likely to establish standing even where "actual, impending enforcement" against the plaintiff is absent. *LSO, Ltd.*, 205 F.3d at 1155.

### a.    Intended Course of Conduct

To establish pre-enforcement standing, the Private School Plaintiffs must first demonstrate they intend to engage in conduct arguably affected by a constitutional interest. *Driehaus*, 573 U.S.

at 161. "[A] plaintiff need not plan to break the law. The concept of intention is more counterfactual than practical." *Peace Ranch*, 93 F.4th at 488 (internal quotations omitted). This inquiry does not require a "mini litigation of the claims" but turns on whether a plaintiff's allegations arguably affect a constitutional interest. *Id*.

Here, the Private School Plaintiffs sufficiently allege a constitutional interest—a First Amendment right to provide non-obscene reading material. The Private School Plaintiffs claim that they provide minors with materials "containing content identified in—and disfavored by—H.B. 710" and that "they will do so in the future," although they contend none of the material is obscene. (Dkt. 38 at pp. 29-30). At this stage, the Private School Plaintiffs do not need to articulate the specifics of their plan to violate the law. *See Planned Parenthood Great Nw.*, 122 F.4th at 837 ("[W]e do not require plaintiffs to specify 'when, to whom, where, or under what circumstances' they plan to violate the law when they have already violated the law in the past.") (quoting *Tingley*, 47 F.4th at 1068). Rather, at this stage, their allegations that they provide material subject to H.B. 710's prohibitions satisfy the first prong of the *Driehaus* analysis.

### b.    Future Proscribed Conduct

The Private School Plaintiffs must also demonstrate H.B. 710 arguably proscribes their future conduct. *Driehaus*, 573 U.S. at 162. The challenged law must apply to the would-be-sanctioned party, although at this stage of the inquiry courts are deferential to a plaintiff's allegations when further scrutiny risks mixing a standing analysis with the merits of the complaint. *See Peace Ranch*, 93 F.4th at 489 (deferring to plaintiff's allegations and avoiding inquires that "unavoidably tangle standing with the merits").

Here, the Private School Plaintiffs have sufficiently alleged H.B. 710 applies to their conduct. Plaintiffs explain that they distribute books or wish to distribute books, which they believe are covered by H.B. 710's definition of "harmful to minors." While Defendants articulate a different interpretation of the statute, the Court does not address the merits of each party's interpretation of the statute at this stage. Because the Private School Plaintiffs provide an arguable interpretation of H.B. 710 as applying to their conduct, they meet the second *Driehaus* prong.

### c.    Substantial Threat of Enforcement

Finally, the Private School Plaintiffs must show a "substantial threat" of enforcement. *Driehaus*, 573 U.S. at 164. Though "history of past enforcement" is a strong indicator, *id.*, "this factor has little weight when the challenged law is relatively new and the record contains little information as to enforcement or interpretation." *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (internal quotations omitted). Whether plaintiffs show a substantial threat of enforcement "often rises or falls with the enforcing authority's willingness to disavow enforcement." *Peace Ranch*, 93 F.4th at 490 (citing *LSO*, 305 F.3d at 1154-56); *see also Idaho Fed'n of Tchrs.*, No. 1:23-cv-00353-DCN, 2024 WL 3276835, at *10 (finding that the Attorney General's opinion, which concluded the statute did not prohibit plaintiffs' speech even if it supported abortion, was a disavowal of intent to enforce).

Here, Defendants do not disavow an intention to enforce H.B. 710. Rather, Defendants argue that Plaintiffs have stated "*no facts whatsoever*" indicating any Defendant has threatened to

seek injunctive relief and that the record is devoid of any threat of enforcement.[5] (Dkt. 32-1 at p. 12). In the First Amendment context, however, "the Supreme Court has endorsed what might be called a hold your tongue and challenge now approach rather than requiring litigants to speak first and take their chances with the consequences." *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) (quotations omitted). Accordingly, a plaintiff need only allege "an actual and well-founded fear that the law will be enforced against them." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988).

The Private School Plaintiffs have alleged they fear enforcement actions for engaging in constitutionally protected conduct and speech. (Dkt. 17-1 at pp. 15-16). At this stage, the Court cannot find their fear is unreasonable. Further, the Court is mindful that the threat of enforcement in a First Amendment challenge is different, if not exceptional, compared to other pre-enforcement challenges. *See LSO, Ltd.*, 205 at 1155 (9th Cir. 2000). "[T]he alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 393. Because Plaintiffs allege that H.B. 710 prohibits constitutionally protected speech and they reasonably fear enforcement, they have established an adequate threat for purposes of the third *Driehaus* prong. Accordingly, the Court finds the Private School Plaintiffs have standing for their pre-enforcement challenge.

---

[5]    The Court notes Plaintiffs cite private citizens' and public officials' statements regarding H.B. 710's enforcement. (Dkt. 1 at ¶¶ 152-64). Plaintiffs, however, do not establish a connection between those statements and the likelihood of Defendants' enforcement.

d.      Ripeness

The Attorney General also argues that Plaintiffs' claims are neither constitutionally nor prudentially ripe. As the Attorney General acknowledges, the constitutional component of the ripeness doctrine often "merges almost completely with standing." *See Thomas*, 220 F.3d at 1139 (internal quotation and citations omitted). (Dkt. 32-1 at p. 14). "Whether the question is viewed as one of standing or ripeness, the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Id.* at 1139 (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)) (cleaned up). "While standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addresses when that litigation may occur." *Planned Parenthood Great Nw.*, 122 F.4th at 839. For the same reasons discussed above regarding the Private School Plaintiffs' standing, the Court finds they have satisfied the constitutional ripeness doctrine because their claims are "concrete rather than [an] abstract challenge." *Id.*

In contrast to constitutional ripeness, the "prudential" component of the ripeness doctrine is "intended to prevent premature adjudication and judicial entanglement in abstract disagreements." *Id.* This inquiry considers two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141. Under the first factor—the fitness of issues for judicial decision—"pure legal questions that require little factual development are more likely to be ripe." *Planned Parenthood Greater Nw.*, 122 F.4th at 840. To evaluate the second factor—hardship—a court considers whether the challenged law prompts "an immediate and significant change in the plaintiffs' conduct of their

affairs with serious penalties attached to noncompliance." *Tingley*, 47 F.4th at 1070-71 (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)).

The Court finds the Private School Plaintiffs satisfy both factors for prudential ripeness. They allege that they fear Defendants will seek an injunction against them and that they have altered their conduct in response to H.B. 710. Because prudential ripeness is a non-merits issue, the Court accepts Plaintiffs' allegations as sufficient to show a change in conduct because of penalties of non-compliance. *See Tingley*, 47 F.4th at 1071 (declining to "peek impermissibly at the merits in determining questions of justiciability"). Although the Private School Plaintiffs do not rely on any statement or threat by Defendants, Plaintiffs' First Amendment claim is "primarily legal" and their allegations regarding book sequestration "provide[] enough of a specific factual context" to show a "direct and immediate effect" of the alleged self-censorship. *Id.* at 1070 (citing *Stormans*, 586 F.3d at 1126).

### 2.    NWAIS' Standing

None of the parties addresses NWAIS' standing as a membership organization. An organization may assert standing either on behalf of its members (*i.e.*, associational standing), or directly on its own behalf (*i.e.*, organizational standing). *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) ("Organizations can assert standing on behalf of their own members, or in their own right.") (citations omitted). A party has associational standing to sue for its members' injuries when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

NWAIS is a 501(c)(3) non-profit corporation and an association of 109 independent private schools, including schools in Idaho (Dkt. 1 at ¶¶ 18-19). It offers accreditation for its members satisfying the curricula for its accreditation standard, and it alleges its members have a constitutional right to "create and offer age-appropriate curricula free of undue interference from the State." (*Id.* at ¶ 21). These activities are germane to NWAIS's purpose—*i.e.*, to offer and maintain the accreditation standards of its Idaho member schools. Additionally, NWAIS's First Amendment claims do not require participation of each NWAIS member. Accordingly, the Court finds NWAIS has associational standing.

### 3.    The Parent Plaintiffs' Standing

Notwithstanding the unique standing analysis for First Amendment pre-enforcement challenges, the Court finds the Parent Plaintiffs do not have standing. A plaintiff must show a "credible threat of adverse state action sufficient to establish standing." *Lopez*, 630 F.3d at 786. "[S]tanding is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "[P]laintiffs must demonstrate standing for each claim that they press," against each defendant, "and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). As previously noted, the pre-enforcement standing inquiry focuses on whether a plaintiff intends to violate the statute and whether a defendant intends to enforce the law against that plaintiff. *Idaho Fed'n of Tchrs.*, No. 1:23-CV-00353-DCN, 2024 WL 3276835, at *9.

Here, H.B. 710 does not prohibit a child, parent, or legal guardian's conduct and does not contain any enforcement provision applicable to them. Rather, the statute only prohibits the conduct of schools and public libraries and only provides for the enforcement of a violation against schools and public libraries. I.C. § 18-1517B(2)-(5). For this reason, the Parent Plaintiffs' conduct

cannot violate the statute, and Defendants cannot enforce the statute against them under the Government Enforcement Provision or otherwise. Accordingly, the Parent Plaintiffs do not have pre-enforcement standing. *Driehaus*, 573 U.S. at 162.

In an effort to avoid this result, Plaintiffs cite several cases and suggest an alternate analysis should apply to establish the Parent Plaintiffs' standing. (Dkt. 38 at pp. 40-42) (citing *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 750-54 (1976); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Arce v. Douglas*, 793 F.3d 968, 987 (9th Cir. 2015)). The common element in each of these case is that the defendant inflicted or threatened to inflict an injury and that injury was traceable to the defendant's conduct.[6] For example, in *Arce*, the plaintiff sued the superintendent of public schools, the state board of education, and board members for complying with a state law that eliminated a cultural education program. 793 F.3d at 975.

Based on these cases, the Parent Plaintiffs argue H.B. 710 unconstitutionally prevents their children from receiving lawful materials. (Dkt. 38 at pp. 40-42). For this to occur, however, a school or public library would necessarily have to comply with H.B. 710's alleged unconstitutional directive. Plaintiffs, however, have not alleged that any school or public library is withholding non-obscene materials from them or named any such entity as a defendant. Further, the Parent Plaintiffs' alleged fear of Defendants' enforcement is not traceable to their alleged anticipated injury—that schools and libraries will withhold non-obscene reading material under H.B. 710.

---

[6]    Plaintiffs cite *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062 (9th Cir. 2020), though this case never analyzed the plaintiff's standing, and the Ninth Circuit did not describe it as a pre-enforcement challenge.

MEMORANDUM DECISION AND ORDER - 20

While the Court does not question the genuineness of Parent Plaintiffs' concerns, it has no jurisdiction to hear a "generalized grievance"—i.e, the concern that H.B. 710 impedes on the general public's right to information. *See Carney v. Adams*, 592 U.S. 53, 59 (2020) ("[A] plaintiff cannot establish standing by asserting an abstract "general interest common to all members of the public . . . no matter how sincere or deeply committed a plaintiff is to vindicate that general interest on behalf of the public.").

### 4.    The Library Plaintiffs' Standing

Finally, the Court finds that the Library Plaintiffs do not have standing because they are not public libraries under the Act. The Library Plaintiffs describe themselves as privately funded libraries open to the public. (Dkt. 1 at ¶¶ 36, 41). The Substantive and Government Enforcement Provisions, however, only apply to a school or a "public library." I.C. §§ 18-1517B(2), (5). Although the Act does not define "public library," other sections of the Idaho Code define a public library as a library which receives funding under Idaho law. *See* I.C. § 63-3022J(5) ("For the purposes of this section, a public library or library district means one that is located within this state and receives funding pursuant to chapters 26 and 27, title 33, Idaho Code."). The Library Plaintiffs do not allege they receive public funding. Further, they do not provide any authority that privately funded libraries, even if open to the public, are public libraries under Idaho law. Accordingly, the Library Plaintiffs are not subject to H.B. 710 and have failed to demonstrate standing. *Driehaus*, 573 U.S. at 162.

### 5.    Plaintiffs' Standing to Enjoin Private Enforcement Provision

Whether Plaintiffs intend to challenge H.B. 710's Private Enforcement Provision is unclear. *See* I.C. § 18-517B(4) (providing plaintiff may recover $250 in statutory damages and

actual damages and injunctive relief). For example, Plaintiffs assert H.B. 710's Private

Enforcement Provision exacerbates H.B. 710's lack of "clarity" and "specificity." (Dkt. 17-1 at

p. 40). Elsewhere, however, Plaintiffs state they are not "assert[ing] the citizen enforcement

provision is independently unconstitutional." (Dkt. 38 at p. 36 n.16). To the extent Plaintiffs seek

to challenge the Private Enforcement Provision, the Attorney General argues they are "barred by

sovereign immunity because the [Attorney General] lacks a connection between the claimed harm

and [its] enforcement authority." (Dkt. 32-1 at pp. 15-16) (relying principally on *Whole Women's

Health v. Jackson*, 595 U.S. 30, 44-55 (2021)).

The rules of equity constrain a court's authority. *Poe by & through Poe*, 144 S. Ct. at 923

(Gorsuch, J., concurring in the grant of stay). "[A] federal court exercising its equitable authority

may enjoin named defendants from taking specified unlawful actions. But under traditional

equitable principles, no court may lawfully enjoin the world at large . . . or purport to enjoin

challenged laws themselves." *Whole Woman's Health*, 595 U.S. at 44 (cleaned up). Thus, a court

"may not issue an injunction against any and all unnamed private persons who might seek to bring

their own . . . suits, even if the attorney general also has the authority to enforce the law in

question." *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 51 F.4th 1182,

1184 n.1 (9th Cir. 2022) (cleaned up).

Here, Plaintiffs pursue a facial attack against H.B. 710 and seek to enjoin any enforcement

of the law. Plaintiffs, however, have not named any defendant threatening to enforce the Act under

the Private Enforcement Provision. For this reason, Plaintiffs lack standing to challenge this

Provision because they cannot seek an injunction against unnamed minors, parents, or guardians

who could (but have not yet) used the Provision.

**B.      The Attorney General's Motion to Dismiss Under Rule 12(b)(6)**

In addition to challenging Plaintiffs' standing, the Attorney General moves to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim. (Dkt. 32). Because the Library Plaintiffs and the Parent Plaintiffs lack standing, the Court dismisses them and their claims, Counts Three, Four, and Five, and it addresses the Attorney General's motion to dismiss only in the context of the remaining claims: Counts One and Two on behalf of NWAIS and the Private School Plaintiffs.

Count One alleges H.B. 710 is unconstitutionally overbroad and violates the First Amendment by "regulating substantially more speech than the First Amendment permits"; by depriving Plaintiffs of their right to "select the materials they wish to include in their school libraries and their curricula"; and by "imposing a content-based restriction." (Dkt. 1 at ¶¶ 233-35). Count Two alleges H.B. 710 is unconstitutionally vague and violates the Fourteenth Amendment because it fails to provide fair notice of the materials schools and public libraries may lawfully make available to minors and because it "invites and encourages arbitrary and discriminatory content-based enforcement" per Defendants' "subjective sensitivities" and those of the parents and minors who may enforce the Act. (Dkt. 1 at ¶ 240).

Both Counts One and Two hinge on whether H.B. 710 incorporates *Miller* and its progeny. The Attorney General's central argument in support of its motion to dismiss Counts One and Two is that H.B. 710's Savings Clause fully incorporates the *Miller* obscenity test. Specifically, the Attorney General asserts that "*Miller* and subsequent Court precedent" are "faithfully incorporated" into H.B. 710's definition of "harmful to minors." (Dkt. 32-1 at p. 17). In opposition, Plaintiffs raise numerous arguments. (Dkt. 38 at pp. 18-27). For example, they argue H.B. 710's

Savings Clause "is a narrowly applicable and incoherent provision that borrows language from [*Miller*'s] Serious Value Clause but offers none of its protections." (*Id.* at p. 19). Further, they argue the Savings Clause only applies to § 18-1514(6)(b)(ii) because of its placement at the end of the definition of "harmful to minors."

The Court, however, is cautious about resolving the merits of these and Plaintiffs' other statutory interpretation arguments at this stage of the litigation with a limited record. Substantive questions of statutory interpretation may be appropriately resolved at summary judgment. *See AFC Realty Capital, Inc. v. Dale*, 2024 WL 1596473, *2 (9th Cir. 2024) ("The dispute presented is a legal question, grounded in statutory interpretation . . . This is properly resolved at summary judgment."); *Lynch v. Rank*, 604 F. Supp. 30, 39 (N.D. Cal.), *aff'd*, 747 F.2d 528 (9th Cir. 1984)*, opinion amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) (finding summary judgment appropriate because "the question before the Court is purely one of statutory interpretation."); *see also Flynt v. Bonta*, 620 F. Supp. 3d 1089, 1093 (E.D. Cal. 2022) ("While this Court previously entertained Plaintiffs' broad statutory interpretation for the purpose of resolving their motion to dismiss, it finds that it is appropriate to revisit the issue in light of the parties' summary judgment briefings.").

Here, Plaintiffs allege H.B. 710 violates their First and Fourteenth Amendment rights. As discussed more fully below in the preliminary injunction analysis, Plaintiffs rely on arguable interpretations of H.B. 710 to articulate claims for relief. If H.B. 710 fails to incorporate *Miller*, as Plaintiffs allege, then it could indeed run afoul of the First and Fourteenth Amendments. (Dkt. 38 at pp. 18-23). These allegations are adequate to state a claim for relief. Accordingly, the Court denies the Attorney General's motion to dismiss Counts One and Two for failure to state a claim. Whether Plaintiffs are likely to succeed on these claims, however, is a different question.

C.    **Preliminary Injunction**

Plaintiffs request a preliminary injunction prohibiting Defendants from enforcing H.B. 710. (Dkt. 17). As previously noted, a plaintiff seeking a preliminary injunction must make a clear showing that she is likely to succeed on the merits; she is likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in her favor; and an injunction is in the public interest. *Winter*, 555 U.S. at 20. Under the sliding scale approach, an injunction is proper where "serious questions going to the merits" and a hardship balance that "tips sharply toward the plaintiff can support issuance of an injunction." *Alliance for the Rockies*, 632 F.3d at 1132. The Court addresses whether the remaining Plaintiffs have clearly shown they are entitled to a preliminary injunction under the remaining Counts One and Two.

1.    **Likelihood of Success**

Counts One and Two assert a facial challenge to H.B. 710—namely Plaintiffs allege that the law is unconstitutionally overbroad and imposes a content-based restriction in violation of the First Amendment and that it is unconstitutionally vague under the Fourteenth Amendment. For the reasons discussed below, the Court concludes Plaintiffs are unlikely to succeed on the merits of these claims.

a.    **Count I -- First Amendment Violation**

The first step in addressing a facial challenge is to assess the law's scope. *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). The inquiry is "[w]hat activities, by what actors, do[es] the law[] prohibit or otherwise regulate?" *Id.* To determine the law's scope, a court first looks at the law's text. *See Am. Booksellers Ass'n, Inc.*, 484 U.S. at 397 (explaining law will be upheld if it is "readily susceptible" to narrowing construction making it constitutional). Even at a

preliminary injunction stage, a court uses the canons of construction because "the resulting interpretation inevitably bears on whether the law's applications are constitutional or not." *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660, 671 (8th Cir. 2024).

The First Amendment does not protect obscene speech. The Court in *Miller* outlined a three-prong test for defining obscene speech: (1) "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest" (*i.e.*, one expression of the "Taken as a Whole Requirement"); (b) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law" (the "Sexual Conduct Requirement"); and (c) . . . "the work, taken as a whole" (another expression of the Taken as a Whole Requirement), "lacks serious literary, artistic, political, or scientific value" (*i.e.*, the "Serious Value Requirement"). *Miller*, 413 U.S. at 24.

Plaintiffs assert that H.B. 710 is unconstitutionally overbroad in violation of the First Amendment because it "fails to incorporate the constitutional safeguards described in *Miller* and its progeny" and, thus, "prohibits a staggering amount of protected speech." (Dkt. 17-1 at pp. 21-22). While Plaintiffs propose several arguable interpretations of H.B. 710 raising constitutional questions, Plaintiffs' challenges raise one central issue, *i.e.*, whether the "scope of H.B. 710 turns on its vague and overbroad definition of 'harmful to minors.'" (*Id.* at p. 11; *see also id.* at pp. 11-12) (arguing H.B. 710 fails to place any meaningful limitation on its core definition of "harmful to minors"; fails to incorporate *Miller's* Serious Value and Taken as a Whole Requirements; restricts descriptions and depictions of innocuous, non-obscene, and non-sexual conduct, including non-sexual descriptions and depictions of same-sex couples; and deprives older minors and adults access to constitutionally protected material).

MEMORANDUM DECISION AND ORDER - 26

In the context of interpreting statutes regarding obscenity, a savings clause that incorporates the *Miller* test is the backstop against concluding that the law has an unconstitutional scope. Given this central issue, the Court focuses on Plaintiffs' likelihood of succeeding on the merits of their argument that the "harmful to minors" definition in § 18-1514(6) fails to incorporate *Miller's* three-pronged test for determining obscenity in § 18-1514(6)'s Savings Clause and accompanying provisions. After weighing Plaintiffs' arguments, the Court concludes Plaintiffs are unlikely to succeed on the merits of this central issue.

i.        **"Taken as a Whole" and "Serious Value" Requirements**

The Savings Clause at 18-1514(6)(b)(ii) states, "[n]othing herein contained is intended to include or proscribe any matter which, *when considered as a whole*, and in context in which it is used, *possesses serious literary, artistic, political or scientific value for minors*." (emphasis added). Plaintiffs concede the Savings Clause echoes *Miller's* Serious Value Requirement. (Dkt. 1 at ¶ 77). Regardless, they make several arguments that H.B. 710 does not incorporate *Miller* and its progeny. First, they take issue with the Clause's use of the word "matter" and "the context in which [that word] is used" because, they contend, it is contrary to *Miller's* Taken as a Whole Requirement. Second, they argue the Savings Clause refers to "any *matter* taken as a whole," rather than any "*work*, taken as a whole" as stated in *Miller*. Because the Clause does not define "matter," Plaintiffs contend it is confusing. (Dkt. 17-1 at p. 24). Third, the Clause instructs that any matter be "considered . . . in context in which it is used." According to Plaintiffs, "[w]hat follows is that § 18-1514(6)(b)(ii) impermissibly ignores the 'work, taken as a whole,' and instead extends First Amendment protection to specific 'description or representation' of disfavored content only if the

challenged 'description or representation' itself has 'serious literary, artistic, political or scientific' value for minors." (Dkt. 17-1 at p. 24). These arguments, at this stage, do not persuade the Court.

Whether the Savings Clause's use of "any matter," rather than "any work," impacts the scope of the Clause is not clear. "Matter" is commonly defined to include both works and depictions, so "matter" could include both tangible objects (such as "materials" defined under § 18-1514(7)) or intangible matters (such as performances). Additionally, the Court is not persuaded that the phrase "and [] the context in which it is used" stirs confusion. The Supreme Court upheld an obscenity statute with an identical "context" phrase. In *Spokane Arcades, Inc.*, the Court ruled a lower court wrongfully invalidated a state law that "considered as a whole, *and in the context in which it is used*, lacks serious literary, artistic, political, or scientific value." 472 U.S. at 494 (emphasis added).

Additionally, the Savings Clause's use of "context" may complement rather than contravene the Taken as a Whole Requirement under *Miller*. For example, as the Attorney General explains, "[w]hat is obscene in the context of a high school sexual education class for high school seniors will be much different than what would be obscene for a second-grade math class, and the context in which the matter is used matters when dealing with minors." (Dkt. 32-1 at p. 22). Plaintiffs also argue that § 18-1514 fails to "distinguish between older minors and younger minors." (Dkt. 17-1 at p. 31). The Savings Clause's consideration of "context," however, enables the state to consider the age of the minor, consistent with the same case law Plaintiffs cite. (Dkt. 41 at p. 9) (citing *Ginsberg v. State of N.Y.*, 390 U.S. 629, 634-35 (1968)).

ii.        "Sexual Conduct" Requirement

Section 18-1514(3) separately defines "sexual conduct" as "any act of masturbation, *homosexuality*, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, the breast." I.C. § 18-1514(3) (emphasis added). Plaintiffs argue that the inclusion of "homosexuality" means "sexual conduct" covers *any* innocuous and non-sexual same-sex conduct and that any alternative interpretation results in superfluity. (Dkt. 17-1 at pp. 29 n.12, 30) ("Because this definition expressly includes 'sexual intercourse' and various forms of 'physical contact,' and because a statute must be interpreted to give effect 'to all the words of the statute if possible, so that none will be void, superfluous or redundant,' the phrase 'any act of homosexuality' must encompass acts *other* than same-sex "sexual intercourse."") (citation and ellipses omitted). The Court recognizes Plaintiffs' genuine concerns regarding the statute's archaic language and how it may isolate a particular class. At this stage, however, the Court does not find that Plaintiffs are likely to succeed in reading the term "homosexuality" to cover non-sexual conduct under the applicable cannons of statutory interpretation.

These cannons include that "only the words on the page constitute the law." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020). When a word appears "in a list or [is] otherwise associated," then the word should be given a "related meaning." *State v. Richards*, 896 P.2d 357, 364 (Ct. App. 1995). Courts rely on this canon of *noscitur a sociis* to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Yates v. United States*, 574 U.S. 528, 543 (2015). Further, courts must also avoid overly broad or narrow readings that may render other terms superfluous. *Id.* at 551 (Alito, J., concurring).

MEMORANDUM DECISION AND ORDER - 29

Here, "homosexuality" appears in a list of terms describing sexually explicit acts, which indicates the word refers only to homosexual intercourse as opposed to any non-sexual act. While Plaintiffs argue such a reading would render the terms "sexual intercourse" and "physical contact" redundant (Dkt. 17-1 at p. 29), this argument incorrectly assumes *noscitur a sociis* is inapplicable if it results in any overlapping meaning. The Court is unaware of any such rule. *See Yates*, 574 U.S. at 550 (Alito, J., concurring) (applying canon of *noscitur a sociis* while acknowledging that all "records" and "documents" are also "tangible objects"). Indeed, even if § 18-1514 omitted any reference to homosexuality, the definition of "sexual conduct" still contains overlapping terms. For example, "sexual intercourse" usually involves "physical contact."

### iii.    Overall Scope of Savings Clause

Finally, the Court considers whether the Savings Clause applies to the *entire* definition of "harmful to minors." Plaintiffs argue the final sentence in § 18-1514(6)(b)(ii), which is the Savings Clause, only applies to the first sentence of that same subsection and that sentence addresses only "representations or descriptions" of "[m]asturbation, excretory functions, or lewd exhibitions of the genitals or genital area." (Dkt. 17-1 at p. 14). This limited interpretation of the Savings Clause is unlikely to prevail.

The Court must interpret the Savings Clause in a manner consistent with how the state courts would interpret the same provision. "In interpreting a state statute, a federal court applies the relevant state's rules of statutory construction." *In re Western States Wholesale Nat. Gas Antitrust Lit.*, 715 F.3d 716, 746 (9th Cir. 2013) (citing *In re Lieberman*, 245 F.3d 1090, 1092 (9th Cir. 2001)). Unless the challenged statute is "invidiously discriminatory," Idaho state courts attach a presumption of validity to the statute and construe the text to achieve a constitutional result.

*Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 68, 28 P.3d 1006, 1011 (Idaho 2001). This rule gives greater weight to statutory interpretative methods construing the Savings Clause to apply to the entire definition of "harmful to minors" in compliance with *Miller.*

Several interpretations support that H.B. 710 complies with *Miller*. First, the Savings Clause begins with the phrase "[n]othing herein contained," and a natural reading of this phrase indicates it applies to entire text "herein contained" within the definition of "harmful to minors." Second, interpreting the Savings Clause as applying only to "[m]asturbation, excretory functions, or lewd exhibitions of the genitals or genital area" risks an absurd interpretation where the Savings Clause applies only to a narrow category of conduct but not any other type of sexual conduct addressed in § 18-1514.

Finally, the Savings Clause uses a structure identical to Idaho Code § 18-4101, which has a comparable savings clause in its definition of "obscene material" and "obscene live conduct." *See* I.C. §§ 18-4101(A)(2)(b), 18-4101(I)(2) ("Nothing herein contained is intended to include or proscribe any matter which, when considered as a whole, and in the context in which it is used, possesses serious literary, artistic, political or scientific value."). Both clauses appear as the terminal sentence in the definition; neither begins with any numeral or other punctuation creating a separate subsection. Unlike the Savings Clause in § 18-1514, however, the clause in § 18-4101 contains a line break. The Court agrees with the Attorney General that this difference is, at worst, a "scrivener's error." (Dkt. 41 at p. 9) (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 462 (1993)). Because the Savings Clause is the final sentence and contains the "nothing herein contained" caveat, a missing line break may be less relevant. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534-35 (2004).

MEMORANDUM DECISION AND ORDER - 31

iv.        **Unconstitutional Versus Constitutional Applications**

Measuring H.B. 710's arguable unconstitutional applications against its constitutional applications also supports the Court's conclusion that Plaintiffs are unlikely to show H.B. 710 is unconstitutional. *See NetChoice*, 603 U.S. at 725 ("The next order of business is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest."). Ultimately, "the question . . . is whether a law's unconstitutional applications are substantial compared to its constitutional ones." *Id.* at 718. The Court "must explore the laws' full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id.* at 726. A law with a legitimate sweep will be struck down in its entirety "only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 723-24.

Plaintiffs contend that Defendants could apply H.B. 710 in multiple unconstitutional ways against Plaintiffs for sharing non-obscene material (mainly, books) with minors. The Court is not convinced, however, that Plaintiffs' hypothetical applications are realistic because, as addressed above, it is unconvinced the Savings Clause and related provisions fail to fully incorporate *Miller*. As long as H.B. 710 incorporates the three central prongs under *Miller*, the law contains a backstop which prohibits its application to non-obscene speech. In reviewing the record, the Court finds Plaintiffs' hypothetical applications—protected material being deemed obscene by Defendants contrary to the First Amendment—are unlikely.

At this stage, constitutional applications of H.B. 710 are more apparent. Although Defendants have not expressly disavowed enforcement of the law, they have done nothing to threaten its enforcement. (Dkt. 36 at p. 3)*.* Meanwhile, Defendants routinely enforce the state's criminal prohibition under § 18-1515 against disseminating material harmful to minors which uses

the same definition of material "harmful to minors" in § 18-1514(6). *See, e.g.*, *State v. Votroubek*, 2014 WL 1691294 (Idaho Ct. App. 2014) (affirming conviction for two counts of disseminating material harmful to minors); *State v. Byington*, 977 P.2d 211 (Idaho Ct. App. 1998) (affirming denial of a motion to suppress regarding defendant's alleged violation of § 18-1515); *State v. Caldrer*, 2018 WL 3233917 (Idaho Ct. App. 2018) (affirming conviction for disseminating material harmful to minors); *Hughes v.* State, 224 P.3d 515 (2009) (denying defendant's ineffective assistance of counsel arguments regarding his conviction under § 18-1515). Despite the state's routine enforcement of § 18-1515, no successful constitutional challenges have been raised to that law. Accordingly, the Court finds that H.B. 710's constitutional applications outweigh its unconstitutional applications based on the current record, and for the foregoing reasons, it concludes Plaintiffs are not likely to succeed on the merits of Count One.

### b.    Count II (Fourteenth Amendment/Vagueness)

Similarly, the Court concludes Plaintiffs are not likely to succeed on the merits of Count Two, alleging H.B. 710 is unconstitutionally vague. "A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982). "A statute can be impermissibly vague . . . if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits . . . [and] if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Where "the law interferes with the right of free speech . . .  a more stringent vagueness test should apply." *Village of Hoffman Estates*, 455

U.S. at 499.[7] Still, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Human Life of Washington, Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)) (internal quotations omitted). Due process does not require "perfect clarity and precise guidance." *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

"For the reasons described . . . in connection with Plaintiffs' overbreadth challenge," Plaintiffs argue H.B. 710 is unconstitutionally vague because it is "replete with incoherent clauses and provisions that make it impossible" to discern its meaning. (Dkt. 17-1 at p. 40). Like Plaintiffs' challenge that H.B. 710 is overbroad, Plaintiffs' vagueness challenge hinges on whether § 18-1514 incorporates *Miller*'s three prongs in its Savings Clause and related provisions. While H.B. 710 does not exhibit "perfect clarity," the Savings Clause acts as a backstop against unconstitutional enforcement by Defendants.

For this reason, the Court perceives little risk of Defendants enforcing H.B. 710 in an unconstitutional manner, particularly because the Attorney General reads the statute according to *Miller*. Because H.B. 710's Savings Clause likely incorporates the *Miller* test, H.B. 710 likely provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited—

---

[7] The Court notes a more lenient standard applies in the context of regulating economic activity: whether a "business person of ordinary intelligence would understand" the conduct prohibited. *Hoffman*, 455 U.S. at 501. Out of an abundance of caution and given the preliminary posture of this case, the Court addresses vagueness as applied to the right to free speech rather than commercial speech.

MEMORANDUM DECISION AND ORDER - 34

*i.e.*, material which is obscene under *Miller* and its progeny. Accordingly, the Court finds Plaintiffs are unlikely to succeed on Count II, alleging that H.B. 710 is unconstitutionally vague.

### 2.    Irreparable Harm

Plaintiffs also fail to show they are likely to suffer irreparable harm absent an injunction. A plaintiff must allege more than a possibility of irreparable harm. *Winter*, 555 U.S. at 22. Absent a showing of a "real or immediate threat the plaintiff will be wronged," a plaintiff cannot show irreparable injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiffs' argument regarding irreparable harm is brief. (Dkt. 17-1 at pp. 44-45). They appear to rely on their allegations that they face "a substantial and immediate threat of enforcement." (Dkt. 1 at ¶ 150). In support of this allegation, they aver instances of an "elected official," a "political party official," "a county sheriff," a "religious and political advocacy group," and a website "commenter," among others and all of whom are unidentified, who made comments or took actions indicating they think schools and public libraries in Idaho are making obscene material available to minors. (*Id.* at ¶¶ 152-64). Plaintiffs cite no legal authority, however, that adverse public sentiment can cause irreparable harm. Notably, Plaintiffs do not allege that Defendants made any similar comments or threatened unlawful enforcement of H.B. 710 because of adverse public sentiment. To the contrary, the record shows Defendants have not threatened to enforce H.B. 710. Moreover, even if enforcement were likely, Plaintiffs have not established irreparable harm at this stage because, as addressed above, the Savings Clause limits Plaintiffs' exposure.

The Court does not question the genuineness of Plaintiffs' concerns raised in their affidavits. Schools and public libraries are often pillars of our communities and formative in many

of our lives. Regardless, Plaintiffs have yet to show irreparable harm that justifies a preliminary injunction.

### 3.    Public Interest and Balance of Hardships

Finally, Plaintiffs fail to show that the balance of equities and public interests weigh "heavily" in their favor, as they argue. (Dkt. 17-1 at 45). Plaintiffs rely principally on the invocation of First Amendment questions to tip the balance of hardships in their favor. (*Id.*) (citing *Fellowship of Christian Athletes v. San Jose Unified School Dist. Bd. of Ed.*, 82 F.4th 664, 695 (2023)). While First Amendment rights implicate strong public interest considerations, this fact alone does not tip the scales in Plaintiffs' favor, especially when they have not established a strong First Amendment claim.

Meanwhile, Idaho has an interest in regulating minors' access to obscene material, as defined under *Miller* and its progeny. Enjoining Defendants from enforcing H.B. 710 under *Miller* would adversely impact the public's interest. Moreover, enjoining enforcement of H.B. 710's definition of "harmful to minors," might also adversely impact criminal prosecutions under § 18-1515, which relies on this definition. *See* § 18-1515 (referencing "material harmful to minors" as defined in § 18-1514(6)). Accordingly, the Court finds Plaintiffs have not shown the balance of equities and overall public interests weigh in favor of a preliminary injunction.

For the foregoing reasons, the Court concludes the remaining Plaintiffs—NWAIS and the Private School Plaintiffs—have failed to show they are entitled to injunctive relief enjoining Defendants' enforcement of H.B. 710 under *Miller*.

## IV.    ORDER

**IT IS ORDERED that:**

1.      The Court **GRANTS** in part and **DENIES** in part Defendant Raul Labrador's Motion to Dismiss (Dkt. 32), Defendant Jan Bennetts' Motion to Dismiss (Dkt. 29), and Defendant Matthew Edward Fredback's Motion to Dismiss (Dkt. 31).

2.      Specifically, the Court **DISMISSES** without prejudice those Plaintiffs who lack standing including: The Community Library Association, Inc.; Collister United Methodist Church, Inc.; Mary Hollis Zimmer; Matthew Podolsky Zimmer; Jeremy Wallace on behalf of his minor child, A.W.; and Christina Leidecker, individually and on behalf her minor child, S.L.

3.      The Court also **DISMISSES** without prejudice the claims asserted by those Plaintiffs who lack standing, including Count Three (First Amendment, Adult Patron Right to Receive), Count Four (First Amendment, Minors' Right to Receive), and Count Five (Fourteenth Amendment, Liberty Interest of Parents).

4.      The Court **DENIES** Defendants' motions to dismiss as to the remaining Plaintiffs, Northwest Association of Independent Schools; Sun Valley Community School, Inc.; and Foothills School of Arts and Sciences, Inc.; and the claims which they assert:  Counts One and Two.

5.      Finally, the Court **DENIES** Plaintiffs' Motion for a Preliminary Injunction (Dkt. 17).

DATED: March 18, 2025

Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 37**