Deborah A. Ferguson, Bar No. 5333
Craig Durham, Bar No. 6428
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, ID 83702
Tel.: (208) 484-2253
daf@fergusondurham.com
chd@fergusondurham.com

Michael J. Grygiel (*pro hac vice*)
Daniela Del Rosario Wertheimer (*pro hac vice*)
CORNELL LAW SCHOOL
FIRST AMENDMENT CLINIC
Myron Taylor Hall
Ithaca, NY 14853
Tel.: (607) 255-8518
mjg395@cornell.edu
ddw83@cornell.edu

Kelly L. McNamee (*pro hac vice* pending)
Christina N. Hernsdorf (*pro hac vice* pending)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel.: (212) 812-0400
Fax: (212) 812-0399
KMcNamee@FoleyHoag.com
CHernsdorf@FoleyHoag.com

*Attorneys for Penguin Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **NORTHWEST ASSOCIATION OF INDEPENDENT SCHOOLS,** *et al.*,<br>                    Plaintiffs,<br>          v.<br>**RAÚL LABRADOR,** in his official capacity as the Attorney General of the State of Idaho, *et al.*,<br>                    Defendants. | Lead Case No. 1:24-cv-00335-AKB (Consolidated Action) |
| **PENGUIN RANDOM HOUSE LLC**, *et al.,*<br>                    Plaintiffs,<br>          v.<br> **RAÚL LABRADOR**, in his official capacity as the Attorney General of the State of Idaho, *et al.*,<br>                    Defendants. | **DECLARATION OF SHERRY SCHELINE**<br><br>Case No. 1:25-cv-00061-AKB (Member Case) |

I, Sherry Scheline, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge of belief:

1.     Though I was born in North Dakota, I consider myself a fourth generation Idahoan. I currently live in the home that my great-grandfather built in 1902 in McCall, Idaho.

2.     I consider myself an "accidental librarian."  I received a Bachelor of Arts in behavioral science from Northwest University.  I have been a member of the Association of Rural and Small Libraries ("ARSL") since 2018 and received ARSL's award for "National Innovator of the Year" in 2023.  I was named an After School Champion by Idaho's Out-of-School Network in 2022.  I have also actively served on the Idaho Library Association ("ILA") since 2018.  I was named a 2025 Mover and Shaker by Library Journal, which is awarded to individuals nationwide who are "shaping the future of libraries."

3.     I currently serve as the Director of the Donnelly Public Library District (the "Donnelly Library"), a tax-supported public library district that provides library services in accordance with chapter 27, title 33 of the Idaho Code.  I have been the Director of the Donnelly Library for over eight years.

4.     As Director of the Donnelly Library, I report to the library's Board of Trustees and have a wide range of responsibilities, including, but not limited to, planning and directing all aspects of the provision of library services to the library's patrons, managing expenses and assisting in overseeing the library's budget, maintaining memberships, and ensuring the library is in compliance with applicable laws, including HB 710.

5.     I am familiar with the best practices that should govern a public library's acquisition and display of materials in its collection, which call for public libraries to make available materials

that convey a wide and diverse array of opinions, including those that may be viewed as unpopular, unorthodox, or even dangerous by some.

6.      The Donnelly Library officially opened to the public on July 1, 2018.  It operates out of a small 1,024-square-foot log cabin. The library is a tenth of the size of Idaho's average library, which is 10,552 square feet.

7.      The Donnelly Library — which subsists on a meager tax-supported budget, afterschool tuition payments, grants, and donations from community members — has extremely limited financial resources.

8.      In line with the best practices noted above, the Donnelly Library's mission is to serve the diverse needs of our patrons, foster learning, provide resources, inspire creative thinking, and assist the community in informed debate and decision-making via the provision of a wide range of information and materials.

9.      Under my supervision and direction, the Donnelly Library maintains a collection of approximately 14,0000 items that have been acquired with applicable best practices and the library's mission in mind.  The materials in our collection are displayed on shelves arranged in the library's single-room open floor plan that, due to the library's small footprint, are viewable and accessible to all who enter the building.

10.     The Donnelly Library's collection has never included any materials that are "obscene" or "harmful to minors" under the Supreme Court's precedent.  Given the best practices I described above, the Donnelly Library's collection does include certain constitutionally protected, non-obscene materials that some may consider "offensive."

11.     For example, our collection includes *Are You There God? It's Me, Margaret.* and *Deenie* by Judy Blume, both of which had a massive impact on me growing up.  Now, however,

3

these books are at risk of being challenged under HB 710 because they discuss difficult — yet important — themes like puberty and teen sexuality.

12.    Books in our young adult section like *The Hate U Give* by Angie Thomas, *Okay, Cupid* by Mason Deaver, *Will Grayson, Will Grayson* by David Levithan and John Green, *13 Reasons Why* by Jay Asher, and *To Kill a Mockingbird* by Harper Lee now too are at risk.  All of these novels discuss themes I believe to be entirely appropriate for young adults, however, HB 710 has restricted their circulation.

13.    Graphic novels also seem to be a major point of concern following the enactment of HB 710.  One such novel is *Becoming Who We Are* by Lilah Sturges and Sammy Lisel.  The novel is meant to be inspirational, depicting nine transgender individuals' childhood experiences. This important and intriguing work is now only available to minors with parental permission, simply because some Idahoans could find it offensive.

14.    I have read HB 710 and have reviewed the law with my colleagues at the Donnelly Library, members of the library's Board of Trustees, members of the Idaho Librarians Association, ARSL members, and others in my community.  Although I understand HB 710 is aimed at "protecting" children by prohibiting public schools and libraries in Idaho from making materials deemed "harmful to minors" available to children under the age of 18, I am unable to make heads or tails of its vague, overbroad, and far-reaching language.

15.    For example, HB 710 does not clearly define what "harmful to minors" means, leaving me and my staff without guidance as to whether any of the materials currently included in the Donnelly Library's collection could potentially fall within the law's undefined scope.

16.    Recent amendments to the law have not clarified the law's scope or meaning.

4

17.    For instance, the law initially defined materials "harmful to minors" as materials harmful to *any* minor.  This means that materials arguably harmful even to the youngest of minors could be subject to the HB 710's prohibition without regard to the fact that material not appropriate for the youngest of minors may be appropriate and of significant value to older minors.  The law now defines materials "harmful to minors" as material harmful to "adolescent minors," defined as "*any* minor" between the ages of 13 and 17.  But, this is hardly an improvement.  This amendment again burdens the oldest of minors' right to access materials that although arguably harmful to a 13 year-old would not be harmful to them.

18.    Notwithstanding its vagaries as to scope and application, HB 710 includes express and serious penalties for those who violate its terms.  The law not only provides county prosecuting attorneys and the attorney general with a cause of action for injunctive relief against any school or public library that violates its substantive provisions, but it also provides the general public with license to subject public libraries and schools to onerous book challenge review procedures and monetary penalties for carrying books and other materials — again, without adequately defining what materials fall within its "protections."  Either way, HB 710 risks litigation for those alleged to have violated its terms.

19.    Although some libraries across Idaho may be able to absorb the litigation risk posed by HB 710 and continue operations unchanged, small rural libraries with exceedingly limited resources cannot.  Unfortunately, the Donnelly Library falls within the latter category.

20.    Though the Donnelly Library's day-to-day operations used to be managed by two people, operations are now the sole responsibility of only one staff member due to budgetary constraints.  Our staff members are spread thin enough already and do not have the bandwidth to review the entire collection to identify and weed out materials that may fall within HB 710's

sweeping definition of "harmful to minors."  Hiring a vendor or paying staff overtime to accomplish this task would cost upwards of $30,000.  The library's tight budget cannot accommodate that price tag.

21.    My concerns about the financial impacts of HB 710 on the long-term viability of the Donnelly Library have only grown since I checked in with the library's insurer and discovered that they have reservations about covering us in the event we become subject to a lawsuit under HB 710.

22.    Even if the Donnelly Library had the financial resources to hire staff to review each book in its collection to determine whether it may fall within HB 710's overbroad, vague, and ambiguous scope — which it does not — its exceedingly small size would nevertheless make it impossible to cordon off any such materials into an adults-only section — let alone in a way that would reasonably "restrict access by minors," as is required by HB 710's express terms.

23.    In short, allowing anyone under the age of 18 to enter a public library in Idaho risks not only an injunction and/or statutory penalties, but also the cost of litigation.  For the Donnelly Library, those risks are simply too high to carry.  Given the Donnelly Library's exceedingly tight budget, the cost to defend even a single challenge could shutter the library.

24.    Accordingly, in direct response to the Hobson's choice posed by HB 710 — accommodate the age restrictions HB 710 demands or risk litigation from public and private litigants — the Donnelly Library made the sad and drastic decision to transition to an adults-only library in May 2024 in order to avoid the risk of litigation and penalties under the Act.

25.    Although I believe an adults-only policy is antithetical to the very purpose of a public library — to provide a welcoming place for *all* patrons to effectively and freely pursue a diverse range of materials and resources — it unfortunately was necessary to mitigate the risks

posed by HB 710.  The transition to an adults-only policy, although necessitated by HB 710, has negatively impacted the library, our members, and the surrounding community.

26.     For example, the Donnelly Library provides a low-cost after-school program for families within our community.  That program was, for a long time and until very recently, the only option for after-school childcare in the entire town of Donnelly.

27.     Our adults-only policy, however, meant the children served by our after-school program could no longer enter the library building without their parent or guardian present — entirely defeating the benefit of the program.

28.     After attempts to relocate our after-school programing to teepees set up outside the library building became unworkable, we implemented a three-part parental/guardian waiver program in an effort to allow children to enter the library without a parent or guardian present. Enforcement of the waiver policy has been a logistical nightmare, necessitating even more administrative work from our already overburdened staff.  Additionally, those families that choose to execute the waivers face stigma, meaning that many opt out of using the library entirely.  On top of all this, the express language of HB 710 makes clear that our waiver program does little to eliminate the risks posed by HB 710, meaning the Donnelly Library is still at significant risk of litigation and enforcement.

29.     Additionally, the adults-only policy and the waiver requirement necessitated by HB 710 have severely limited patrons' access to the library and the materials it houses, with drastic year-over-year reductions in circulation since HB 710 was enacted.  In calendar years 2021, 2022, and 2023, our circulation climbed from 8,571, to 10,404, and 13,774, respectively.  In calendar year 2024, during which HB 710 went into effect, circulation dropped to 5,884, and last year our

7

circulation further plummeted to 5,182.  I expect continued reductions in circulation numbers and overall library usage while HB 710 remains in effect.

30.    Circulation reductions diminish the Donnelly Library's already limited budget, since multiple grants on which the library depends award funds based, in part, on library usage.

31.    As noted, while necessary to mitigate the risks posed by HB 710, the transition to an adults-only library and implementation of the waiver requirement does not eradicate such risk. Even with these measures in place, I remain concerned that the Donnelly Library will be subject to complaints, enforcement proceedings, and costly litigation as a result of HB 710, particularly given the law's vagueness and overbreadth.  The law, as written, provides law enforcement and members of the public carte blanche to demand a "review" of materials within the Donnelly Library and/or to institute an enforcement action, no matter how frivolous such actions may be or the steps taken to avoid a violation.

32.    HB 710's vague and overbroad provisions have and continue to imperil the ongoing viability of the Donnelly Library.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct, to the best of my knowledge and belief.

Dated:  May 10, 2026                                                    /s/ Sherry Scheline
        Donnelly, Idaho                                          Sherry Scheline

8